## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SIMRATPAL SINGH,

Plaintiff,

v.

ASHTON B. CARTER, *in his official capacity as Secretary of Defense, et al.*,

Defendants.

Civil Action No. 16-399 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

Pending before the Court are the plaintiff's Application for Preliminary Injunction ("Pl.'s PI Mot."), ECF No. 3, and Motion to Consolidate ("Pl.'s Mot. Consolidate"), ECF No. 39. Specifically, the plaintiff seeks "a preliminary injunction directing Defendants to grant him a permanent religious accommodation that would allow him to wear uncut hair, a beard, and turban, as required by his Sikh faith, while serving in the Army." Pl.'s PI Mot. at 1; *see also* Pl.'s Proposed Order, ECF No. 3-1 (requesting that defendants be "preliminarily enjoined from enforcing against Plaintiff any Army regulations that would prohibit him from wearing unshorn hair, a beard, and turban as required by his Sikh faith"). The plaintiff also requests that this case be consolidated with *Singh v. McConville*, No. 16-cv-581, another case pending before this Court. For the reasons that follow, both motions are denied.[1]

---

[1] The plaintiff has requested an additional oral argument on the pending motion, Pls.' PI Mot. at 1; Pl.'s Mot. Consolidate at 5, but a hearing was already held after the motion was filed, *see* Minute Entry (Feb. 29, 2016). In addition, the Court finds, for the reasons stated in this Memorandum Opinion, that the facts of this case do not warrant expedition. *See* LCvR 65.1(d). Accordingly, and given the sufficiency of the parties' written submissions to resolve the pending motions, this request is denied. *See* LCvR 7(f) (allowance of oral hearing is "within the discretion of the court"). The plaintiff's Expedited Motion for Status Conference, ECF No. 43, is similarly denied.

I.      BACKGROUND

The background in this case is laid out in considerable detail in the Court's prior Memorandum Opinion granting the plaintiff's motion for a temporary restraining order ("TRO") and enjoining the defendants from "subjecting the plaintiff to any non-standard or discriminatory testing for his helmet and gas mask during the pendency of the litigation." *See Singh v. Carter*, No. 16-cv-399, 2016 WL 837924, at *1–4, 16 (D.D.C. Mar. 3, 2016). Shortly after that decision, on March 30, 2016, Debra S. Wada, the Assistant Secretary of the Army ("ASA") for Manpower and Reserve Affairs, granted the plaintiff's then-pending "request for an exception to Army personal appearance and grooming standards," subject to certain limitations. Defs.' Notice Army's Action ("Defs.' Notice"), Ex. 1, Mem. Decision Regarding Request for Religious Accommodation – CPT Simratpal Singh (Mar. 30, 2016) ("Accommodation Decision") ¶ 1, ECF No. 26-1.

As detailed in the Accommodation Decision, the plaintiff's religious accommodation is limited in the following four ways. First, "[t]he bulk of [the plaintiff's] hair, beard, or turban may not be such that it impairs [his] ability to wear the Army Combat Helmet (ACH) or other protective equipment or impedes [his] ability to operate [his] assigned weapon, military equipment, or machinery." *Id.* ¶ 2. Relatedly, ASA Wada "may withdraw or limit the scope of [the plaintiff's] accommodation for reasons of military necessity, including if [she] cannot confirm that Army protective equipment (to include ACH and protective mask) will provide [the plaintiff] the intended degree of protection against the hazards presented by the duties or areas to which [he] will be assigned." *Id.* ¶ 6.

Second, the plaintiff must wear his articles of faith in a manner prescribed by the Accommodation Decision, until such time as the Army publishes "clear uniform standards

applicable to Soldiers who have received a religious accommodation," which standards "the Army intends to develop." *Id.* ¶ 3.[2]

Third, the plaintiff's accommodation may be suspended "during [his] assignment to hazardous duties or areas," defined as those duties which would entitle the plaintiff to special "hazardous duty incentive pay." *Id.* ¶ 5.

Lastly, the plaintiff's religious accommodation is not "permanent" or unlimited. Instead, ASA Wada "intend[s] to re-evaluate" the plaintiff's accommodation in one year, or earlier "based upon military necessity if [the plaintiff] must be assigned to another unit," because the Army intends "to gather additional information and develop additional standards" for soldiers who have received religious accommodations. *Id.* ¶¶ 3, 6. As part of the information gathering process to support "the Army's interest in mission accomplishment, which requires military readiness, unit cohesion, good order, discipline, health, and safety on both the individual and unit levels, [ASA Wada] ha[s] requested that [the plaintiff's] command provide quarterly assessments of the effect of [his] accommodation, if any, on unit cohesion and morale, good order and discipline, health and safety, and individual and unit readiness." *Id.* ¶ 4.

The relief sought by the plaintiff in his motion for a preliminary injunction would require the defendants to withdraw all, except the second, of these enumerated limitations on his

---

[2]     The Accommodation Decision specifically instructs the plaintiff:
Until such standards are published, you may wear a black turban (or under turban, as appropriate) with the Army Service Uniform (ASU), the Army Physical Fitness Uniform, and the Army Combat Uniform (ACU). While wearing ACU outdoors, you may wear a turban (or under turban, as appropriate) of a matching camouflage pattern. Unless your duties, position, or assignment require you to wear the Army Combat Helmet (ACH) or other protective gear, you are not required to wear military headgear in addition to your turban. Your beard must be rolled and tied to a length not to exceed two inches while in garrison and a length not to exceed one inch while in the field, during physical training, or in a deployed environment not covered by paragraph 5 below. Your hair may not fall over your ears or eyebrows or touch the collar of your uniform. You may display your rank on your turban, provided you remove the rank in circumstances where military headgear is not customarily worn.
*Id.*

religious accommodation, *see* Pl.'s Notice Intent Resp. Defs.' Notice Army's Action ("Pl.'s Notice") at 1 n.1, ECF No. 34 ("Captain Singh has no objection to the specific interim standards set forth in Paragraph 3 of his Accommodation."), and to grant him a permanent religious accommodation that is not conditioned on the specific safety equipment provided by the military or any potential effect on military readiness and unit cohesion.  Notably, this *preliminary* injunctive relief essentially encompasses all of the relief sought in the underlying complaint.  *See* Compl. at 34 ¶ d, ECF No. 1.

## II.    LEGAL STANDARD

### A.    Preliminary Injunctive Relief

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (alteration in original) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)); *Abdullah v. Obama*, 753 F.3d 193, 197–98 (D.C. Cir. 2014) (same).  A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original) (quoting 11A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2948 (2d ed. 1995)).

The D.C. Circuit has, in the past, followed the "sliding scale" approach to evaluating preliminary injunctions, where "a court, when confronted with a case in which the other three factors strongly favor interim relief may exercise its discretion to grant [preliminary relief] if the movant has made a substantial case on the merits."  *Wash. Metro. Area Transit Comm'n v.*

*Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).  Under the sliding scale approach, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor."  *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009).

The continued viability of the sliding scale approach is highly questionable, however, in light of the Supreme Court's holding in *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008), that a court may not issue "a preliminary injunction based only on a possibility of irreparable harm [since] injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *See Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring) (noting that, after *Winter*, "the old sliding-scale approach to preliminary injunctions—under which a very strong likelihood of success could make up for a failure to show a likelihood of irreparable harm, or vice versa—is no longer controlling, or even viable" (internal quotations and citation omitted)); *see also In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013) (requiring proof that all four prongs of preliminary injunction standard are met before injunctive relief can be granted).  Thus, the plaintiff bears the burden of persuasion on all four preliminary injunction factors in order to secure such an "extraordinary remedy."

The D.C. Circuit has expressly cautioned that "[t]he power to issue a preliminary injunction, especially a mandatory one, should be 'sparingly exercised.'"  *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (citation omitted).  Heeding this caution, where, as here, the plaintiff's requested injunction is "mandatory—that is, where its terms would alter, rather than preserve, the *status quo* by commanding some positive act," Judges on this Court have required the moving party to "meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from

5

the denial of the injunction." *See, e.g., Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp.

3d 32, 39 (D.D.C. 2014) ("EPIC II") (collecting cases); *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35

& n.2 (D.D.C. 2001) (holding that where "a ruling would alter, not preserve, the *status quo*," the

plaintiff "must meet a higher standard than were the injunction he sought merely prohibitory," in

light of the Supreme Court's holding that "'[t]he purpose of a preliminary injunction is merely to

preserve the relative position of the parties until a trial on the merits can be held'" (alteration in

original) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981))); *Columbia Hosp. for

Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd*,

159 F.3d 636 (D.C. Cir. 1998).[3]   Moreover, the D.C. Circuit has cautioned that a preliminary

injunction generally "should not work to give a party essentially the full relief he seeks on the

merits." *Dorfmann*, 414 F.2d at 1173 n.13 (citing *Selchow & Righter Co. v. W. Printing &

Lithographing Co.*, 112 F.2d 430 (7th Cir. 1940)); *see also Diversified Mortgage Inv'rs v. U.S.

Life Ins. Co. of N.Y.*, 544 F.2d 571, 576 (2d Cir. 1976) (collecting cases).

## B.    Case Consolidation

Pursuant to Federal Rule of Civil Procedure 42(a), a district court has authority to order

consolidation when actions involving "a common question of law or fact" are pending before the

court.  FED. R. CIV. P. 42(a).  Consolidation pursuant to Rule 42(a) is permissive and vests a

---

[3]        The D.C. Circuit has not opined on the issue, but application of a heightened standard of review to requests
for mandatory preliminary injunctive relief has been adopted in other Circuits.  *See, e.g., Pashby v. Delia*, 709 F.3d
307, 319–20 (4th Cir. 2013) (observing that "heightened standard of review" would apply to mandatory injunctions);
*Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (noting
that, to obtain a "disfavored" mandatory preliminary injunction, "the movant has a heightened burden of showing
that the traditional four factors weigh heavily and compellingly in its favor" (citing *Dominion Video Satellite, Inc. v.
EchoStar Satellite Corp.*, 269 F.3d 1149, 1154–55 (10th Cir. 2001))); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406
(2d Cir. 2011) (holding that "'a mandatory preliminary injunction that alters the *status quo* by commanding some
positive act . . . should issue only upon a clear showing that the moving party is entitled to the relief requested, or
where extreme or very serious damage will result from a denial of preliminary relief'" (quoting *Citigroup Glob.
Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010))); *cf. Friends for All
Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 834–35 & n.31 (D.C. Cir. 1984) (declining to express a
view on whether "a heightened showing should in fact be required" where plaintiff seeks "a mandatory preliminary
injunction").

purely discretionary power in the district court. *See United Bhd. of Carpenters & Joiners v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 689–90 (D.C. Cir. 2013) (reviewing denial of motion to consolidate for abuse of discretion); *Moten v. Bricklayers, Masons & Plasterers Int'l Union*, 543 F.2d 224, 228 n.8 (D.C. Cir. 1976) ("[T]he question of consolidation . . . is ordinarily left to the sound discretion of the District Court."); *Santucci v. Pignatello*, 188 F.2d 643, 645 (D.C. Cir. 1951) (holding that, since the actions were "pending before the court," "the question of consolidation was . . . a matter within the sound discretion of the District Court"); *Stewart v. O'Neill*, 225 F. Supp. 2d 16, 21 (D.D.C. 2002) ("The decision whether to consolidate cases under Rule 42(a) is within the broad discretion of the trial court."). In exercising that discretion, district courts weigh the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated. *See Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985); *Jackson v. Ford Consumer Fin. Co.*, 181 F.R.D. 537, 539 (N.D. Ga. 1998); *Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc.*, 163 F.R.D. 500, 503 (S.D. Ohio 1995) (in determining whether consolidation is appropriate, "the court balances the value of time and effort saved by consolidation against the inconvenience, delay, or expense increased by it").

Consolidation is generally appropriate where it "would promote convenience and judicial economy, simplify management of the cases, . . . facilitate global resolution of the . . . claims[,] and conserve judicial resources," *Steele v. United States*, No. 14-cv-1523, 2015 WL 4121607, at *2 (D.D.C. June 30, 2015), and, thus, "particularly appropriate when the actions are likely to involve substantially the same witnesses and arise from the same series of events or facts,"

*Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009); *see also Vazquez Rivera v. Congar Int'l Corp.*, 241 F.R.D. 94, 95 (D.P.R. 2007) (explaining that consolidation is intended to avoid overlapping trials containing duplicative proof, excessive cost, and waste of valuable court time in the trial of repetitive claims, among other considerations).  On the other hand, consolidation is not appropriate when "the parties at issue, the procedural posture and the allegations in each case are different."  *Blasko v. Wash. Metro. Area Transit Auth.*, 243 F.R.D. 13, 15 (D.D.C. 2007); *Stewart*, 225 F. Supp. 2d at 21.

## III.   DISCUSSION

The plaintiff's motion for a preliminary injunction is addressed first, before turning to the plaintiff's pending request to consolidate this case with that of three other Sikh plaintiffs, who are also requesting religious accommodations from various military branches.

### A.     Motion for Preliminary Injunction

The plaintiff continues to request the extraordinary remedy of preliminary injunctive relief, despite the Army's March 30, 2016 decision on his religious accommodation request, claiming that "he is entitled—at a minimum—to a preliminary injunction that adds legal force to his Accommodation and clarifies the RFRA [Religious Freedom Restoration Act] standards under which it may appropriately be limited."  Pl.'s Notice at 10; *see also id.* at 6 ("[A]n injunction is necessary to ensure that the Army implements the Accommodation appropriately.").  The defendants oppose this motion on grounds of mootness.  Defs.' Notice Army's Action ("Defs.' Notice") at 3–4, ECF No. 26.  The Court disagrees with both sides:  while the plaintiff's claims are not moot, he is nonetheless not entitled to the preliminary injunctive relief he seeks.

1.    *Mootness*

The defendants assert that ASA Wada's decision "fully accommodates Plaintiff's religious exercise by allowing him to wear a beard, turban, and unshorn hair while in uniform" and that, since the plaintiff's accommodation request has been granted, a live case or controversy no longer exists for this Court to decide.  Defs.' Notice at 3–4.  Under Article III of the United States Constitution, this Court "may only adjudicate actual, ongoing controversies."  *District of Columbia v. Doe*, 611 F.3d 888, 894 (D.C. Cir. 2010) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988).  The mootness doctrine prohibits the court from deciding a case if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  *Id.* (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)); *see Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 272 (D.C. Cir. 2015).

"A case becomes moot . . . 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'"  *Cambell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Knox v. Serv. Emps. Int'l Union*, 132 S. Ct. 2277, 2287 (2012)).  Yet, "'[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'"  *Id.* (quoting *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)); *see Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 43 (D.C. Cir. 2015) (explaining that a case is not moot where "the court has the 'power to effectuate a partial remedy'" (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992))); *Schnitzler v. United States*, 761 F.3d 33, 39 (D.C. Cir. 2014) (holding a plaintiff's "claim is not moot" where "he has not received all the relief he sought"); *cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) ("'Past exposure to illegal conduct does not in itself show a present case or controversy regarding

injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (ellipsis in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))); *Schnitzler*, 761 F.3d at 37–39 ("A case is moot when 'a party has already obtained all the relief that it has sought.'" (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013))).  A party's "'prospects of success' on . . . a claim are 'not pertinent to the mootness inquiry.'"  *Schnitzler*, 761 F.3d at 39 (quoting *Chafin*, 133 S. Ct. at 1024)).

Here, though the plaintiff has, since filing the case and the pending motion for preliminary injunctive relief, received a "long-term" religious accommodation from the Army, *see* Defs.' Opp'n Pl.'s Appl. PI ("Defs.' Opp'n") at 15, 27, ECF No. 35 (referring to plaintiff's religious accommodation as "long-term"), he seeks a "*permanent* religious accommodation," Pl.'s PI Mot. at 1 (emphasis added).  "Long-term" does not equate to "permanent," and the plaintiff's accommodation is subject to reevaluation in one year's time.  *See* Accommodation Decision ¶ 6.  Thus, the plaintiff has not obtained all the relief he seeks, and his claims are not moot.

Moreover, as the plaintiff notes, *see* Pl.'s Notice at 9–10, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed," *Knox*, 132 S. Ct. at 2287.  Accordingly, an exception to the mootness doctrine would apply here, where the defendants' "voluntary cessation" of the challenged conduct—*i.e.*, the defendants' failure to grant the plaintiff a religious accommodation—is the basis for the mootness argument.  *Goings v. Court Servs. & Offender Supervision Agency for D.C.*, 786 F. Supp. 2d 48, 62 (D.D.C. 2011).

### 2.    *Merits*

While the plaintiff's claims are not moot, a preliminary injunction is nonetheless not warranted under these circumstances, where the plaintiff has not shown that he is likely to suffer irreparable harm without preliminary relief.  As the defendants point out, "[t]he form requested of Plaintiff's injunction, that the Court give the Accommodation the 'force of law,' demonstrates that Plaintiff is not facing imminent, substantial harm."  Defs.' Opp'n at 43.

Though the D.C. Circuit continues, post-*Winter*, to charge district courts with weighing the four preliminary injunction factors, *see, e.g., In re Navy Chaplaincy*, 697 F.3d 1171, 1178 (D.C. Cir. 2012) ("We review the district court's ultimate decision to deny injunctive relief, as well as its weighing of the preliminary injunction factors, for abuse of discretion."); *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011) (referring to the district court's "charge to weigh the factors with on another"), the Supreme Court made clear in *Winter* that a plaintiff may not prevail without some showing on each factor, *see* 555 U.S. at 23–24, 31–32 (holding that "[a] proper consideration of" the balance of equities and public interests "alone requires denial of the requested injunctive relief" and, thus, finding no need to address the plaintiffs' likelihood of success on the merits).  Consequently, a plaintiff must show "that irreparable injury is *likely* in the absence of an injunction," regardless of the plaintiff's likelihood of success on the merits of his claims.  *Winter*, 555 U.S. at 22 (emphasis in original); *see id.* ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring) ("Importantly, the *Winter* Court rejected the idea that a strong likelihood of success could make up for showing only a possibility (rather than a likelihood) of irreparable

harm.  In other words, the Court ruled that the movant always must show a likelihood of irreparable harm.").

In light of the long-term religious accommodation granted to the plaintiff after the issuance of the TRO, the plaintiff cannot now make the requisite showing of irreparable harm, particularly in light of the D.C. Circuit's "'high standard for irreparable injury'" to warrant preliminary injunctive relief.  *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).  In order to be considered "irreparable," the injury "must be 'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.'"  *Id.* (emphasis in original) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297).

The plaintiff claims that he is entitled to a preliminary injunction because (1) "the relief granted by the Accommodation is incomplete and limited by standards that are inconsistent with the requirements of [RFRA] and the First Amendment," and (2) "the Accommodation potentially exposes Captain Singh to discriminatory treatment similar to" that which this Court deemed unlawful in the TRO decision.  Pl.'s Notice at 2.  The Court addresses each argument *seriatim* below.

## a.      *Limitations on the Plaintiff's Religious Accommodation*

First, the plaintiff takes issue with the fact that his accommodation is "not truly permanent."  *Id.* at 4.  Indeed, as the plaintiff notes, the accommodation letter indicates that the Army will reevaluate the plaintiff's accommodation in one year and leaves open the possibility that the plaintiff's accommodation is reevaluated sooner if the plaintiff is assigned to another unit or hazardous duties, or if the defendants cannot confirm that the Army's protective equipment

12

will adequately protect him.  *Id.* at 3–4; *see* Accommodation Decision ¶¶ 5–6.  According to the

plaintiff, these limitations "impose a substantial burden on [his] religious exercise" because they

render his "ability to continue serving . . . uncertain," "call[] into question" his career and

retirement prospects, expose him to "[t]he risk of being subject to military discipline,"

"stigmatize" him, "potentially discourage [his] commanders from fully investing in [him],"

"essentially treat[]" him and other "American Sikhs as second-class citizens," and "subject [him]

to an apparent cloud of suspicion."  Pl.'s Notice at 3–4.[4]

     None of these harms that the plaintiff claims he will suffer from the limitations of his

religious accommodation are "'both certain and great,' 'actual and not theoretical,' 'beyond

remediation,' and 'of such *imminence* that there is a clear and present need for equitable relief to

prevent irreparable harm.'"  *Mexichem Specialty Resins, Inc.*, 787 F.3d at 555 (emphasis in

original) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297).  Indeed, by the

plaintiff's own account, the harm is "uncertain" and he is exposed only to the "risk" of, or

---

[4]     To the extent that the plaintiff argues that the limitations of his accommodation affect "other Sikhs seeking to serve in the military," Pl.'s Notice at 3, any such affect is irrelevant to the determination of whether the plaintiff is himself likely to suffer irreparable harm and, thus, the Court need not address it.  Moreover, as the defendants note, *see* Defs.' Opp'n at 22–23 n.9, the plaintiff lacks standing to assert the legal rights or interests of third parties, *see Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 794–95 (D.C. Cir. 2010) ("'The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally.  A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action, [and] . . . . [the Supreme] Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (second alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))).  The plaintiff yesterday filed a Notice of Supplemental Authority, ECF No. 45, addressing this issue by quoting language in *Heffernan v. City of Paterson*, No. 14-1280, 2016 WL 1627953 (U.S. Apr. 26, 2016), in which the Supreme Court recognized that the constitutional harm from discharging or demoting an employee for engaging in protected political activity would be the same, whether the employer's action "does or does not rest upon a factual mistake."  *Id.* at *5.  In so doing, the Supreme Court acknowledged that "[t]he discharge of one tells the others that they engage in protected activity at their peril."  *Id.*  The Court also highlighted, however, that "Heffernan [himself] was directly harmed, namely, demoted . . . ."  *Id.*  The language in *Heffernan* is, thus, of limited utility in evaluating the pending motion for preliminary injunctive relief because, even if consideration is given to the impact of the defendants' conduct on the plaintiff's "colleagues," *id.*, as the *Heffernan* Court did, the end result would be the same:  the long-term religious accommodation that has been granted to the plaintiff shields him from imminent harm, and may, as a result, even encourage, rather than discourage, other Sikh soldiers or aspiring soldiers to petition for similar religious accommodation.

"potential," harm.  Pl.'s Notice at 3–4.  The defendants highlight that any such risk is minimal

since "[c]urrently, there are no pending requirements for Plaintiff to perform hazardous duty,"

Defs.' Notice at 3; Defs.' Opp'n at 1, 17, and they "have provided notice to the Court that none

of the circumstances identified by [ASA] Wada as reasons for her to reevaluate the

Accommodation are scheduled to occur," Defs.' Opp'n at 4; *see also id.* at 43 ("[T]here is no

indication that [the plaintiff's] Accommodation will be reviewed any sooner than in a year.").

Moreover, the plaintiff has not shown with any reasonable certainty that, when reviewed, his

accommodation will be revoked or limited.

Accordingly, the Court agrees with the defendants that the plaintiff has failed to

"demonstrate that any Army action will [likely] substantially burden his religious exercise during

the [remainder of this] litigation."  *Id.*[5]

### b.    *Potential Exposure to Discriminatory Treatment*

Second, the plaintiff takes issue with ASA Wada's request that the plaintiff's "command

provide quarterly assessments of the effect of [his] accommodation, if any, on unit cohesion and

morale, good order and discipline, health and safety, and individual unit readiness,"

---

[5]    In fact, as the defendants point out, the plaintiff has publicly acknowledged his appreciation for the religious accommodation he has received, despite its limitations.  *See* Defs.' Opp'n at 1–2; Corey Dickstein, *With Beard, Turban Exemption Granted, Sikh Army Captain Plans to 'Move Forward,'* STARS AND STRIPES (Apr. 1, 2016), Defs.' Suppl. App'x at B59, ECF No. 35-1 ("The best thing about [the long-term accommodation] is I can just go back to doing my job . . . . I can put all this stuff behind me and move forward and just go back to being a regular soldier." (quoting plaintiff)); Rebecca Kheel, *Army Allows Sikh Soldier to Wear Turban, Beard,* THE HILL (Apr. 1, 2016, 9:37 AM), Defs.' Suppl. App'x at B62 ("I am thankful that I no longer have to make the choice between faith and service to our nation." (quoting plaintiff)); *id.* at B63 ("Hooah to the Army for finally letting [the plaintiff] enjoy his own religious freedom." (quoting plaintiff's counsel)); Bryant Jordan, *Army Relents, Grants Waiver to Let Sikh Officer Wear Beard, Turban,* MILITARY.COM (Apr. 1, 2016), Defs.' Suppl. App'x at B65 ("I'm grateful the Army is allowing me to serve without being forced to compromise my religion." (quoting plaintiff's statement released by plaintiff's counsel)).  The plaintiff also publicly expressed the sentiment that "From where I stand, I don't have any issues about being able to meet Army readiness and Army safety standards[.] . . . If I fail to meet an Army performance standard then . . . please reexamine my accommodation, take another look at it.  But, so far, I have not, and do not plan on failing any Army performance standards."  Dickstein, *supra,* Defs.' Suppl. App'x at B60 (second ellipsis in original; quoting plaintiff).  These public comments indicate that the plaintiff "is not suffering any immediate harm of any sort—let alone imminent irreparable harm."  Defs.' Opp'n at 1.

Accommodation Decision ¶ 4, arguing that the quarterly reports "serve[] no legitimate purpose other than to burden [the plaintiff's] religious exercise by pressuring him to give up his articles of faith." Pl.'s Notice at 8. In the plaintiff's view, the quarterly assessments (1) "*potentially* subject[] the plaintiff to discriminatory treatment" and give his "commanders 'unbridled discretion' to take *potentially* detrimental action against him because of his faith," Pl.'s Notice at 6, 8–9 (emphasis added) (quoting *Sanjour v. EPA*, 56 F.3d 85, 96 (D.C. Cir. 1995) (en banc), which addressed a First Amendment challenge to regulations limiting government employee speech); and (2) are *per se* discriminatory because no other soldier, including other observant Sikh soldiers who have been granted religious accommodations, has ever been "subject to quarterly monitoring under any circumstances," *id.* at 6–7; *see also* Pl.'s Reply Mem. Support Appl. PI ("Pl.'s Reply") at 23, ECF No. 37 ("[N]o other soldiers are subject to standardless, career-chilling quarterly reporting on an individual basis.").[6]

The quarterly-assessment requirement is troubling. As another decision from this Court has explained, "it is difficult to see how accommodating [the Sikh] plaintiff's religious exercise would do greater damage to the Army's compelling interests in uniformity, discipline, credibility, unit cohesion, and training than the tens of thousands of medical shaving profiles the Army has already granted," and "it is undisputed that the Army's own regulations permit soldiers to wear yarmulkes and other religious headgear." *Singh v. McHugh*, 109 F. Supp. 3d 72, 96–97 (D.D.C. 2015). Indeed, four other religious Sikhs have served in the Army with exceptional distinction and their grooming and appearance accommodations have had only a positive effect,

---

[6]      The plaintiff cites as support the "'indefinite' religious accommodations" granted to three observant Sikh soldiers in August 2013. Pl.'s Notice at 7. The "indefinite" accommodations granted to those three soldiers, however, contain limiting language similar to the plaintiff's long-term accommodation, providing that the accommodations may be revoked or suspended for military necessity. *See* Pl.'s Notice, Ex. 1, Exception to Uniform and Grooming Policy Based on Religious Belief – MAJ Kamaljeet Kalsi (Aug. 6, 2013) ¶ 3, ECF No. 34-1; *id.*, Exception to Uniform and Grooming Policy Based on Religious Belief – CPT Tejdeep Rattan (Aug. 6, 2013) ¶ 3; *id.*, Exception to Uniform and Grooming Policy Based on Religious Belief – SPC Simran Lamba (date illegible) ¶ 3.

if any, on unit cohesion and morale, good order and discipline, health and safety, and individual
unit readiness.  *See id.* at 98–100 (describing the soldiers' significant contributions, military
achievements and "praise heaped on each man's service—including, in particular, for their
discipline and leadership").  Still, as the plaintiff notes, "[i]t is certainly *imaginable* that the
religious exemption could . . . be the trigger for another soldier's [prejudicial] actions that could
have an adverse impact on 'unit cohesion and morale, good order and discipline,'" just as
"presumably [occurred] . . . when the Army integrated minorities, women, or gays and lesbians."
Pl.'s Notice at 8 (emphasis added).  While the routine evaluation of the effect of the plaintiff's
religious accommodation may potentially have adverse consequences for the plaintiff and other
Sikhs, adverse consequences are not inevitable, however.  As another court has recognized,
"[t]he lessons of our constitutional history are clear:  inclusion strengthens, rather than weakens
our most important institutions," and, thus, "[w]hen we integrated our schools, education
improved.  When we opened our juries to women, our democracy became more vital.  When we
allowed lesbian and gay soldiers to serve openly in uniform, it enhanced unit cohesion."  *Latta v.
Otter*, 771 F.3d 456, 476 (9th Cir. 2014) (citations omitted).

    Nonetheless, the plaintiff's first criticism of the quarterly-assessment requirement fails
for the same reason as his criticisms of his accommodation's limitations:  the plaintiff has failed
to show that the quarterly-assessment requirement is *likely* to cause him irreparable harm during
the remainder of this litigation.  Significantly, in the plaintiff's own words, the required quarterly
assessments have merely the "potential" to subject him to discriminatory treatment.  This risk is
considerably undercut by the plaintiff's own admission that he "has an outstanding working
relationship with his immediate commander and has complete confidence that she will treat him
fairly."  Pl.'s Notice at 8; *see also* Defs.' Opp'n at 26 ("Plaintiff's speculation is simply

unwarranted given Plaintiff's representations that his command recommended approval of his accommodation. . . . as well as the presumption of good faith by Government officials.").[7]

The plaintiff's second criticism also must fail.  The plaintiff concedes that the Army has, in fact, previously assessed the effect "on unit morale, cohesion, good order, and discipline" of the religious accommodation granted to another Sikh soldier.  Pl.'s Notice at 7 (quoting *Singh v. McHugh*, 109 F. Supp. 3d at 100).  "The Army conducted an internal examination of the effect of Corp. Lamba's religious accommodation on his service, and the study concluded that 'the Soldier's religious accommodations did not have a significant impact on unit morale, cohesion, good order, and discipline,'" nor on any soldier's health and safety.  *Singh v. McHugh*, 109 F. Supp. 3d at 100–01 (citations omitted).  Given that another soldier was subject to "an internal examination" or "study," it is simply not true that the plaintiff's accommodation subjects him "to a standard that no other soldier, including no other Sikh soldier, has been subjected to."  Pl.'s Notice at 7.

To the extent that the plaintiff argues that the quarterly-assessment requirement is *per se* discriminatory, *see* Pl.'s Reply at 22 ("[T]he standardless quarterly reporting is both discriminatory in itself and also permits Captain Singh to be subject to intentional discrimination in the future."), and, as a result, that "no further showing of irreparable injury is necessary," *Singh v. Carter*, 2016 WL 837924, at *13–14 (citing authority), the plaintiff has not established that the balance of equities tips in his favor.  The Army has a compelling need to maintain unit cohesion and morale, good order and discipline, health and safety, and individual and unit readiness, and while "military interests do not always trump other considerations," *Winter*, 555

---

[7]     The plaintiff has publicly "expressed no concerns" about the quarterly-assessment requirement, saying "he has not received negative feedback from anyone in his battalion," "'it has been absolutely professional and there have been zero issues.'"  Dickstein, *supra*, Defs.' Suppl. App'x at B61 (quoting plaintiff).

U.S. at 26, here, the Court finds that they do.  The quarterly-assessment requirement appears to

fall into the realm of "'complex, subtle, and professional decisions as to the composition,

training, equipping, and control of a military force,' which are 'essentially professional military

judgments,'" *id.* at 24 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)), and are afforded

"great deference," *id.* (quoting *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986)).  Given the

procedural posture of this case and the preliminary nature of the relief that should be awarded,

the Court is not, on this record, prepared to grant the plaintiff the extraordinary relief he seeks.

*See Dorfmann*, 414 F.2d at 1173–74 ("The great equitable power to enjoin a party pendente lite

should not be exercised unless it is manifest that the normal legal avenues are inadequate, that

there is a compelling need to give the plaintiff the relief he seeks, and that the injunction will not

wreak greater harm on the party enjoined.").

*     *     *

In sum, the plaintiff fails to meet the high standard required for injunctive relief and

resolution of the plaintiff's claims is, thus, "a matter for the normal course of litigation."  Defs.'

Opp'n at 4.  The Court is not persuaded that "[l]eaving the current Accommodation in place but

unsecured by this Court's action," for the time being, "will effectively put Captain Singh in

limbo for the remainder of his military service," as the plaintiff warns, Pl.'s Reply at 1, when the

merits of the plaintiff's claims will be reviewed in the normal course of litigation.

**B.    Motion for Case Consolidation**

The plaintiff also requests that this case be consolidated with *Singh v. McConville*, No.

16-cv-581, which was filed exactly one month after this case along with the plaintiff's Notice of

18

Related Case, Case No. 16-cv-581, ECF No. 2.  Based upon the plaintiff's notice, the new case was assigned to this Court, pursuant to Local Civil Rule 40.5(c)(1).[8]

The cases are certainly similar.  As in this case, the plaintiffs in *Singh v. McConville* assert claims against the same defendants under RFRA and the First and Fifth Amendments of the U.S. Constitution pertaining to the Army's allegedly unlawful grooming and personal appearance regulations and discriminatory treatment of religious Sikhs who wish to serve or are serving in different parts of the U.S. Army.  *See* Compl. at 27–34, Case No. 16-cv-399, ECF No. 1; Compl. at 46–52, Case No. 16-cv-581, ECF No. 1; *see also* Defs.' Objection Pls.' Notice Related Case at 2, Case No. 16-cv-581, ECF No. 37 ("[B]oth cases involve followers of the Sikh faith who requested religious accommodations to deviate from the Army's uniform and grooming standards.").

The three plaintiffs in *Singh v. McConville*, however, are each distinguishable from the plaintiff in this case.  As the defendants point out, the plaintiff in this case is a West Point graduate, "a commissioned officer, serving on active duty, assigned to a world-wide deployable unit," whereas the plaintiffs in *Singh v. McConville* "recently enlisted into the reserve component of the Army" and "are awaiting the initial military training necessary to qualify for military assignment."  Defs.' Opp'n Pls.' Mot. Consolidation at 3–4, ECF No. 40.  Specifically, the plaintiff Kanwar Bir Singh was admitted on August 6, 2015 to the Massachusetts National Guard

---

[8]    The defendants have objected to the designation that the cases are related, pursuant to Local Civil Rule 40.5(c)(3).  Defs.' Objection Pls.' Notice Related Case, Case No. 16-cv-581, ECF No. 37.  When a party objects to a related case designation, "the matter shall be determined by the judge to whom the case is assigned," LCvR 40.5(c)(3), and the Court has yet to rule on the defendants' objection in that case.  The related case determination is separate and distinct, however, from the resolution of a motion to consolidate.  *See Stewart*, 225 F. Supp. 2d at 18–21.  The related-case assignment in this case has no bearing on the disposition of the plaintiff's Motion to Consolidate because "[m]otions to consolidate cases assigned to different judges of this Court shall be heard and determined by the judge to whom the earlier-numbered case is assigned."  LCvR 40.5(d).  Thus, the undersigned Chief Judge, who is assigned the earlier-numbered case, would be tasked with deciding the plaintiff's motion for consolidation, regardless of whether the later-numbered case had been randomly assigned, as unrelated, to another Judge.

and is scheduled to begin Basic Combat Training ("BCT") on May 31, 2016, Compl. ¶¶ 147, 151, 170, Case No. 16-cv-581; the plaintiff Harpal Singh signed a six-year contract in November 2015 to serve in the Army's Military Accessions Vital to the National Interest ("MANVI") program and is scheduled to begin BCT on May 9, 2016, *id.* ¶¶ 29, 34; and the plaintiff A.S.G., a minor, is currently a high school senior who enlisted on December 17, 2015 with the Virginia Army National Guard and is scheduled to begin BCT on May 23, 2016, *id.* ¶ 35. If the cases are consolidated, the factual differences may cause confusion.

Additionally, unlike the plaintiff in this case, the plaintiffs in *Singh v. McConville* have not brought any claims related to specialized helmet and gas mask testing. Since the Court already opined on the merits of the plaintiff's specialized testing claims in resolving the plaintiff's TRO motion last month, *see Singh v. Carter*, 2016 WL 937924, at *8–13, and now resolves the plaintiff's preliminary injunction motion, only the claims remaining in the plaintiff's original complaint remain. This case is, thus, well on the way to complete resolution, while *Singh v. McConville* is in an earlier stage, and consolidation is likely to delay the final resolution of this case.

Given the factual distinctions between the plaintiff here and the plaintiffs in *Singh v. McConville*, the differing allegations, and the cases' respective procedural postures, the Court finds that it would, aside from creating possible confusion, not simplify case management or conserve judicial resources to consolidate the cases and, accordingly, declines to exercise the discretion to do so.

IV.     **CONCLUSION**

For the foregoing reasons, the plaintiff's Application for Preliminary Injunction, ECF No.

3, and Motion to Consolidate, ECF No. 39, are denied.  The plaintiff's Expedited Motion for

Status Conference, ECF No. 43, is similarly denied.

An appropriate Order accompanies this Memorandum Opinion.

Date:  May 6, 2016

_____
BERYL A. HOWELL
Chief Judge